# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:16-CV-00820-GCM

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY, L.P., | ) ) ) |
| **Plaintiff,** | ) ) |
| v. | )    **ORDER** ) |
| FAIRPOINT COMMUNICATIONS, INC., | ) ) ) |
| **Defendant.** | ) ) |

**THIS MATTER** is before the Court upon the Defendants' Motion to Dismiss (Doc. No. 10). The Plaintiff has filed a response in opposition and the Defendants have filed a reply. This matter is now ripe for disposition.

## I. FACTUAL BACKGROUND

Sprint is a telephone company that contracts with telephone providers—like FairPoint and Oxford—for transport to carry its customers' calls into and out of the State of Maine. Complaint ¶ 6 ("Compl."). The relationship between Sprint and FairPoint is governed by a tariff (the "Tariff") filed with the Federal Communications Commission ("FCC"). Compl. ¶ 4. The Tariff includes a switched and special access service called Facilities Management Service ("FMS"). Under FMS FairPoint's wholly-owned subsidiary, Northern New England Telephone Operations LLC ("NNETO"), facilitates the transport of telecommunications traffic between two locations—a Sprint-designated "primary premises" and a Sprint-designated "secondary location."[1] Compl. ¶ 5. A primary premises is a location where a telephone channel/circuit is

---

[1] FairPoint Communications, Inc.'s Motion to Dismiss is filed on FairPoint's behalf, but states that FairPoint's wholly-owned subsidiary, Northern New England Telephone Operations ("NNETO") filed the Tariff and owns the

either originated or terminated. A secondary location is the serving wire center from where FMS mileage is determined. *Id.* FairPoint is responsible for transporting traffic between these two locations, and may charge Sprint for the mileage between these two locations. Compl. ¶ 22.

Sprint's traffic is carried by Sprint over its network to Sprint's "point of presence," or "POP" in Portland, Maine. From there, Oxford provides for the transport of Sprint's traffic from Portland to an end office in Bangor, Maine, and then to Sprint's designated primary premises, which Sprint says is located at the "Oxford hub." However, the main point of contention in this case is that FairPoint argues that the actual designated primary premises location is the Bangor office. Doc. No. 13 at 5. FairPoint provides transport for the phone call from the Oxford hub to the end user receiving the phone call. Compl. ¶ 16.

Outgoing traffic is handed off in reverse. Compl. ¶ 17. Also, for some of the circuits at issue in the Complaint, the primary premises and secondary location are at the same end office, *i.e.*, they are both located at the Oxford hub. Compl. ¶ 16.

Pursuant to a contract between Oxford and Sprint, Oxford bills Sprint for its transport services between an end office in Bangor, Maine and Sprint's primary premises. Compl. ¶ 18. Sprint alleges that FairPoint has also been billing Sprint for transport services between Bangor and the primary premises, even though FairPoint has not been providing these transport services despite the fact that the Tariff only permits FairPoint to charge Sprint for transport services between the primary premises and secondary location. FairPoint has refused to amend its billing practices and has rejected Sprint's submitted claims as to the disputed amounts. Compl. ¶ 32.

---

telecommunications facilities over which transport is provided on behalf of Sprint. FairPoint Mem. at n. 1. FairPoint has not moved to dismiss based on any question of ownership or failure to name the correct party.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a case may be dismissed for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the court must determine whether the complaint "provide[s] enough facts to state a claim that is plausible on its face." *Sarvis v. Alcorn*, 826 F.3d 708, 718 (4th Cir. 2016) (quoting *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009)). In order to reach facial plausibility, the plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III. DISCUSSION

### a. Tariff Requirements

The Complaint alleges that FairPoint is charging Sprint for the transport of telecommunications traffic—transport that it does not provide—from locations other than what is permitted by the Tariff. Compl. ¶¶ 6-7. The Tariff provides that FairPoint can only charge for transport from a customer's designated "primary premises" to the "secondary location." Compl. ¶¶ 21-24. The Complaint alleges that for certain circuits, Sprint has designated the Oxford hub as its primary premises and that these designated locations meet the requirements of FairPoint's Tariff. Compl. ¶¶ 16, 23, 25. However, Sprint alleges that rather than calculate transport mileage charges from these primary premises, FairPoint has been calculating transport charges based on FairPoint's "end office" in Bangor, Maine. Compl. ¶ 24. Sprint alleges that this violates the Tariff and therefore constitutes an unjust and unreasonable practice in violation of 47 U.S.C. § 201(b). *See, e.g.*, *Qwest Comm. Corp., Complainant,* Second Order on Reconsideration, 24

F.C.C. Rcd. 14801, 14813 (2009) (billing practice that did not comport with tariff requirements found to be unjust and unreasonable in violation of Section 201(b)).

FairPoint argues the Court should dismiss all claims because Sprint failed to plead sufficient facts to state the claim that the defendant violated the Tariff because (1) the Oxford hub cannot be the designated primary premises under the Tariff requirements and (2) Sprint never designated the Oxford hub as its primary premises on its Access Service Requests.

The Court will not say at this stage that as a matter of law the Tariff prohibits Sprint from designating the Oxford hub as the primary premises. FairPoint argues that under the Tariff "the primary premises must consist of Sprint facilities." Doc. No. 10-1 at 10. However, FairPoint does not cite for the Court any clear language from the Tariff that supports the proposition that Sprint must own the designated primary premises. ("When a tariff is clear and unambiguous on its face, no construction by the court is necessary, and the parties are bound by its terms." *D.S. Swain Gas Co. v. Dixie Pipeline Co.*, No. 89-1796, 1990 U.S. App. LEXIS 27031, at *6 (4th Cir. July 19, 1990) (citation omitted)).

The Complaint alleges that the Oxford hub, *i.e.*, Sprint's primary premises, qualifies as a Type 1 premise, which can have either an "entrance facility" or "multiplexing node." To be a primary premises, the location requires a network interface, defined as "the interface point at a customer's designated primary premises where the connection is made between the FMS network and the customer's network." *Id.* Sprint's Complaint sufficiently alleges facts to plausibly state that FairPoint violated the Tariff requirements and that the Oxford hub could be designated as Sprint's primary premises.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint;" the motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability

of defenses." *Butler v. United States,* 702 F.3d 749, 752 (4th Cir. 2012) (internal quotation marks omitted). When deciding a Rule 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*, 551 U.S. 308, 322 (2007). Sprint alleges in its Complaint that the Oxford hubs meet the primary premises requirements. Compl. ¶ 23. FairPoint argues that this is not the case. To rule in favor of FairPoint's argument would require the Court to not accept an allegation contained in Sprint's Complaint as true and resolve an argument surrounding the facts in FairPoint's favor. At this stage, this Court will not go beyond testing the sufficiency of Sprint's Complaint.

Next, the Court turns to FairPoint's allegation that Sprint never designated the Oxford hub as its primary premises on its Access Service Requests. In the Complaint Sprint says that it did designate the Oxford hub as its primary premises on its Access Service Requests. Compl. ¶ 23. Again FairPoint's argument raises a factual dispute regarding whether and how Sprint designated its primary premises. Similar to the Court's analysis of its previous argument, those questions of fact are not properly raised or resolved on a motion to dismiss.

Additionally, FairPoint argues that if Sprint is allowed to designate the Oxford hub as the primary premises, and thereby dictate the routing of its traffic, the entire purpose of the FMS plan would be defeated. Doc. No. 10-1 at 14. However, Sprint does not attempt to control how FairPoint routes the FMS traffic on the FairPoint network in this action, it is attempting to select the Oxford hub as the primary premises from which traffic is routed. As Sprint states "[o]nce those two points are selected by Sprint, FairPoint is free to route the traffic between the two points on their network in any way they choose." Doc. No. 13 at 7-8. Therefore, the Court finds that FairPoint's argument that the entire purpose of the FMS plan would be defeated by the designation of the Oxford hub to be without merit.

5

### b. Specificity of Facts in the Complaint

Next, FairPoint argues that Sprint's complaint does not allege sufficient specific facts to state a claim under Rule 12(b)(6) because it relies only on naked assertions. FairPoint says that Sprint cannot just assert it was improperly billed, it must identify each alleged incorrect charge subject to this dispute.

Federal Rule of Civil Procedure 8 requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citations omitted). Indeed, the short and plain statement required under Rule 8(a)(2) "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id* "Ultimately, '[f]actual allegations must . . . raise a right to relief above the speculative level,' and the complaint must offer 'enough fact to raise a reasonable expectation that discovery will reveal evidence' of the alleged activity." *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 556).

The Court's analysis looks to Sprint's complaint to decide whether it contains "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). The Complaint identifies that the dispute concerns the appropriate charges for facilities used to transport traffic over the telephone network located between FairPoint's Bangor, Maine end office and Sprint's designated FMS primary premises. Compl. ¶ 15. It further describes that Sprint's traffic is transported by Oxford from Sprint's point of presence to the Bangor end office, and then from the Bangor end office to an Oxford hub. *Id.* ¶¶ 16, 17. It

6

alleges that FairPoint was improperly billing Sprint for the transportation provided by Oxrford. *Id.* ¶ 27-31. The Complaint alleges that "[a]s of October 31, 2016, the amount of overbilled FMS transport charges from August 2013 through October 2016 is approximately $2 million." *Id.* ¶ 19.

FairPoint argues that Sprint must identify the specific billing dates in order to provide the grounds of Sprint's entitlement to relief from an unjust and unreasonable practice in violation of 47 U.S.C. § 201. This Court disagrees that such specifics are necessary to give FairPoint notice of the claim and grounds on which it rests. This Complaint contains sufficient facts to state a claim for unjust and unreasonable practice in violation of 47 U.S.C. § 201 that is plausible on its face. The specific facts FairPoint asks for are not necessary for Sprint's complaint to meet the 12(b)(6) standard and therefore FairPoint's motion to dismiss based on lack of sufficient detail is denied.

### c. Statute of Limitations

FairPoint also contends that any claims to overcharging made by Sprint should be restricted by to the two-year statute of limitations period set forth in 47 U.S.C. § 415(c). A motion to dismiss is usually not the appropriate stage at which to decide an affirmative defense, like a statute of limitations defense. *CSX Transp., Inc. v. Gilkson*, 406 Fed.Appx. 723, 728 (4th Cir. 2010) ("'a motion to dismiss filed under Federal Rule of Procedure 12(b)(6) ... generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred'")(citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). However, an affirmative defense may be reached by a Rule 12(b)(6) motion to dismiss in the "rare" circumstance where "'all facts necessary to the affirmative defense clearly appear on the face of the complaint.'" *Id.* (citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

7

So the Court must determine whether all facts necessary to conclude Sprint's claims are time-barred appear on the face of the Complaint. The statute on which FairPoint relies, 47 U.S.C. § 415(c), provides that actions for recovery of overcharges shall be filed within two years of accrual. Section 415(g) defines "overcharges" as "charges for services in excess of those applicable . . . ." 47 U.S.C. § 415(g). The Complaint alleges that FairPoint's ongoing practice of billing for transport services that were never ordered or rendered is unjust and unreasonable. Compl. ¶¶ 30-31. Sprint argues that this is very different from a claim for overcharges and is indeed a dispute about inapplicable charges. The Complaint does not contain all the facts necessary on its face to decide this dispute and reach the merits of the statute of limitation defense based on a theory of recovery of overcharges. The Court therefore will not decide at this stage whether the statute of limitations in 47 U.S.C. § 415(c) applies to restrict Sprint's allegation.

### d. Count II

FairPoint argues that Sprint's state law claim for breach of contract, Count II, should be dismissed because federal law, the federal claim for breach of the Tariff, preempts the state law claim. The filed tariff "carries the force of federal law." *Bryan v. BellSouth Communs.,* 377 F.3d 424, 429 (4th Cir. 2004). Sprint agrees that federal law applies to the disputed charges governed by the FCC Tariff and preempts the state law breach of contract claim. Doc. No. 13 at 15. But, Sprint argues that it should be permitted to preserve its state law breach of contract claim "to the extent that this Court finds that any portion of the disputed charges were billed under the intrastate tariff and are not covered by the FCC Tariff." Doc. No. 13 at 15. This intrastate tariff was not included in the Complaint or in Count II. This claim appears not to have been alleged until Sprint's response memorandum. This Court will not preserve a claim both parties agree is

preempted by federal law to the extent that a new claim could be made based on information yet to be discovered. Therefore, the Court finds that Count II, the state law claim for breach of contract, is preempted by federal law and is dismissed.

### e. Count III

In Count III Sprint seeks a declaratory ruling that says

> a. Sprint is not responsible for paying transport charges submitted for mileage that FairPoint does not provide;
> b. FairPoint may not refuse to transport telecommunications traffic between Sprint's designated primary premises and the secondary location because of Sprint's refusal to pay for transport FairPoint does not provide, and for which billing is not permitted under FairPoint's Tariff;
> c. FairPoint is only permitted to charge Sprint for transport services between Sprint's designated primary premises and the secondary location; and
> d. FairPoint must create a process that does not bill for transport charges for mileage that FairPoint does not provide.

Compl. ¶ 52(a), (b), (c), & (d). FairPoint argues that this Court may not properly exercise jurisdiction over the declaratory judgment action. For a federal court to exercise jurisdiction in a declaratory judgement proceeding, three elements must be met:

> (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

*Volvo Const. Equipment N.A., Inc. v. CLM Equipment Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (internal quotation marks omitted). The first and the third jurisdictional prerequisites are contested by FairPoint. The second jurisdictional prong, that the court must possess an independent basis for jurisdiction over the parties, was satisfied in the Complaint, where Sprint established jurisdiction through both a federal cause of action and diversity of the parties. Compl. ¶ 11-13. This was not contested by FairPoint.

As for the first jurisdictional prong, "[a] case meets the actual controversy requirement only if it presents a controversy that qualifies as an actual controversy under Article III of the Constitution." *Volvo*, 386 F.3d at 592. On the other hand, a controversy is not present where the defendant has not taken preliminary actions against the plaintiff nor made any indication that it plans to take future legal action against the plaintiff. *Jones v. Sears Roebuck and Co.*, 301 Fed.Appx. 276, 282 (4th Cir. 2008) (citing *Volvo*, 386 F.3d at 592 n.12).

The parties have mostly separated their discussions of the declaratory relief claim into a discussion of the merits of sections (a), (c) & (d) and the merits of section (b). The Court believes this is a logical separation and will analyze Count III in the same manor.

The Court first considers sections (a), (c) & (d). In this case, the defendant has filed a counterclaim in its answer to plaintiff's complaint. FairPoint Answer at 18. FairPoint brought the following claims against Sprint in its counterclaim: Counts I and II allege violation of the Tariff through a failure to pay; Count II alleges a violation of 47 U.S.C. § 201 because of unjust and unreasonable practice; Count IV alleges a violation of the Tariff through a failure to pay for circuits provided to Sprint under the FMS Plan; and in Count V FairPoint asks for declaratory relief that says that charges under the FMS Plan are valid and must be paid by Sprint.

This counterclaim clearly creates an actual controversy for the declaratory relief requested by Sprint in (a), (c) & (d). There is an actual controversy about the Tariff and where FairPoint has the right to charge for the transportation of traffic.

Now the Court turns to the third jurisdictional prerequisite, whether the Court should use its discretion to decline to entertain the declaratory judgment action for (a), (c) & (d). But, this may only be done with good reason. *Volvo*, 386 F.3d at 594. "[A] district court is obliged to rule on the merits of a declaratory judgment action when declaratory relief 'will serve a useful

purpose in clarifying and settling the legal relations in issue,' and 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Id.* (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 325, 325 (4th Cir. 1937)).

Many courts have previously recognized that a declaratory judgment does not serve a useful purpose where that purpose is only to resolve an already-existing breach of contract claim. *Metra Industries, Inc. v. Rivanna Water & Sewer Authority*, 2014 WL 652253 at *2 (W.D.Va. Feb. 19, 2014); *see also Miami Yacht Charters, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2012 U.S. Dist. LEXIS 57041, at *2, 2012 WL 10100125 (S.D.Fla.2012) (noting that "[a] court must dismiss a claim for declaratory judgment if it is duplicative of a claim for breach of contract and, in effect, seeks adjudication on the merits of the breach of contract claim"); *Narvaez v. Wilshire Credit Corp.,* 757 F.Supp.2d 621, 636 (N.D.Tex.2010) (dismissing as "redundant" a declaratory judgment claim that was asserted in addition to a claim for of breach of contract); *Camofi Master LDC v. Coll. P'ship, Inc.,* 452 F.Supp.2d 462, 480 (S.D.N.Y.2006) (emphasizing that the declaration sought would "already be addressed in the breach of contract claim" and, thus, that "a declaratory judgment would not further clarify legal relations among the parties").

Here, the same conduct is in dispute for Sprint's claims for declaratory judgement in (a), (c), & (d) and for breach of the Tariff. Sprint alleges in Count I that "FairPoint improperly billed Sprint for FMS transport charges from its Tariff on file with the FCC" and that FairPoint is not allowed "to assess charges for transport services that it does not provide." Compl. ¶ 41-42. As Sprint stated in its memorandum, in (a), (c) & (d) Sprint seeks a declaratory judgement that "FairPoint cannot charge Sprint in a manner inconsistent with FairPoint's Tariff, *i.e.*, it may only charge for the transport of traffic between Sprint's designated primary premises and the secondary location." Doc. No. 13 at 14. These sections of the declaratory judgement seek the

resolution of issues which must be resolved in the course of litigating Sprint's other claims. Thus, the declaratory relief sought in section (a), (c), & (d) is dismissed because it is duplicative and will not "serve a useful purpose in clarifying and settling the legal relations in issue." *Volvo*, 386 F.3d at 594.

Next, the Court turns to the declaratory relief sought in section (b). The counterclaim does not create an actual controversy for the declaratory relief requested by Sprint in (b). However, FairPoint sent a letter to Sprint stating that it intended "'terminate service on the circuits for which Sprint is withholding payment.'" Doc. No. 13 at 14. Defendants threatened to stop transporting Sprint's telecommunications traffic in this letter. FairPoint argues that this threat should not create an actual controversy because FairPoint did not actually terminate the service. However the Court finds that the proposed standard of an actual controversy only existing when FairPoint actually cuts off the service to be unaligned with previous precedent. In *Jones* the Fourth Circuit faced a dispute over whether a threatened injury rose to the level of a case or controversy and found that it did not because "none of the Defendants has threatened to invoke the arbitration provision." 301 Fed.Appx. at 282. Here the threat has been made. The defendant has taken a preliminary action against the plaintiff through this threatening letter. *See id.* Thus, the first element for jurisdiction over a declaratory judgment is met by section (b) as the complaint does allege "an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Volvo*, 386 F.3d at 592.

Finally, the Court finds it would not be an abuse of discretion to exercise its jurisdiction over section (b). Defendant does not present any arguments that this is not the case. A ruling on the merits of section (b) will serve a useful purpose as it will resolve the uncertainty regarding the actions the parties may take in resolving such a billing dispute. This is particularly useful in a

case such as this one where the parties will continue to have a contractual relationship. *See Tapia v. United States Bank, N.A.*, 718 F. Supp. 2d 689, 695 (E.D. Va. 2010) (stating that declaratory judgements "are designed to declare rights so that parties can conform their conduct to avoid future litigation.").

## IV. Conclusion

For the foregoing reasons the Court finds that the Defendants' Motion to Dismiss (Doc. No. 10) be **GRANTED IN PART AND DENIED IN PART**. Count II is hereby **DISMISSED** and Count III (a), (c) & (d) is hereby **DISMISSED**.

The parties are referred to the Court's earlier order entered March 13, 2017 for the deadline for the parties to conduct an Initial Attorney's Conference.

**SO ORDERED.**

Signed: July 7, 2017

Graham C. Mullen
United States District Judge